OPINION
{¶ 1} Appellant Brian Peterson [hereinafter appellant] appeals from the August 17, 2005, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which granted permanent custody of appellant's two putative children, Tres and Aaron Peterson, to the Stark County Department of Job and Family Services [hereinafter agency].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Cathy May is the biological mother of Tres Peterson (d.o.b. 11/6/95) and Aaron Peterson (d.o.b. 11/25/96).[1]
Appellant is the putative father. In January, 2003, Tres and Aaron were removed from Ms. May's home and placed in foster care. Years before, the two children had been placed in the legal custody of their alleged paternal grandmother, Elenore Peterson.[2] Ms. Peterson had allowed the children to move back in with their mother without any formal court action.
 {¶ 3} On January 24, 2003, the agency filed a complaint alleging dependency and neglect and seeking temporary custody of the children.[3] Ms. Peterson (the grandmother) was included as a party to the action along with her son, appellant. At that time, appellant was in prison as a result of a conviction for domestic violence committed against Cathy May, the children's mother. On February 20, 2003, the agency moved to amend the complaint to delete the allegation of neglect. Ms. Peterson, the legal custodian, stipulated to dependency. By Judgment Entry filed February 24, 2003, the children were found to be dependent and temporary custody was granted to the agency.
 {¶ 4} On July 23, 2003, a case plan was approved and adopted. Essentially, appellant and Ms. May's case plan and its subsequent amendments included the following goals: 1) both were to complete a psychological evaluation at Human Development and Counseling; 2) both were to complete parenting skills at Goodwill Industries; 3) Ms. May was to attend domestic violence counseling at Renew; and 4) abstain from drugs and alcohol; and 5) submit to a substance abuse evaluation at Quest Recovery Services. As to appellant, he was to establish paternity also.
 {¶ 5} On March 3, 2004, Ms. May filed a Motion to Change Legal Custody to her. By Judgment Entry filed on April 5, 2004, the motion was granted with the agency retaining protective supervision of the children.
 {¶ 6} Subsequently, the agency learned that appellant was to be released from prison on or about June 2, 2004. After appellant was released, the agency received information that appellant was residing with Ms. May after his release, despite his domestic violence against Ms. May and the agency's concerns expressed to Ms. May. See Affidavit filed June 4, 2004.
 {¶ 7} On June 4, 2004, the agency filed a motion for immediate review. In the motion, the agency sought a restraining order enjoining any party from allowing contact between the children and appellant. In addition, the agency requested that Ms. May be ordered to submit a urine sample for chemical analysis due to Ms. May's alleged admission of recent use of cocaine. Last, the agency sought to amend the case plan to mitigate the risk appellant presented to the children. By separate motion, filed the same day, the agency sought an ex parte no contact order.
 {¶ 8} On June 4, 2004, an ex parte no contact order was issued as to appellant and the children. In addition, the trial court ordered that appellant obtain a psychological evaluation and a Quest evaluation. A hearing on the motion for a restraining order was held on June 7, 2004. Appellant was present and represented by appointed counsel. As a result, a no contact order was issued pending a psychological report from Melymbrosia. In addition, the trial court amended the case plan to add that appellant was to obtain a psychological exam and a Quest evaluation. Further, the trial court ordered that the children could initiate five-minute phone calls with appellant.
 {¶ 9} On June 14, 2004, the agency filed a motion to extend protective supervision. A hearing on the motion was set for July 23, 2004.
 {¶ 10} A hearing was held on June 15, 2004. Neither appellant nor Ms. May appeared.
 {¶ 11} On July 23, 2004, the agency's motion to extend protective supervision came on for hearing. The trial court made the following findings at that hearing: "[Domestic violence] incidents continue. Mother has been abusing alcohol. Mother is moving, has new job, has not done Quest or Renew. Father made appointment at Melymbrosia [but] did not appear. Mother has difficulty handling children. Magistrate finds it to be in children's best interests to be removed from Mother's custody [and] placed in [temporary custody] of [agency]." Accordingly, the trial court ordered that the two children be picked up and placed in the agency's custody. The agency's motion for extension of protective supervision was continued for further hearing.
 {¶ 12} By Judgment Entry filed on October 5, 2004, the trial court extended the agency's temporary custody to January 23, 2005. Ms. May stipulated to the extension.
 {¶ 13} A hearing was held on December 13, 2004. The trial court found that the children were in a foster home, Ms. May had completed parenting classes but relapsed by using cocaine and therefore, had restarted Quest. The trial court ordered that Ms. May initiate a paternity action as soon as possible.
 {¶ 14} On December 22, 2004, the agency filed a motion for permanent custody. A hearing on the motion was held on August 2, 2005. Ultimately, after hearing the evidence presented, and by Judgment Entry filed August 17, 2005, the trial court found that appellant had abandoned the children by virtue of his lack of contact with them, his lack of bonding with them and his failure to attempt any form of reunification. Further, the trial court felt that extending temporary custody of the children to allow appellant and Ms. May to work on their case plan was not in the childrens' best interest impliedly because appellant and Ms. May would not be able to remedy the initial problems in the case anytime in the foreseeable future.
 {¶ 15} Accordingly, the trial court issued a Judgment Entry in which it granted permanent custody of the children to the agency based upon findings that the children cannot be placed with either parent at this time or within a reasonable period of time, the children were abandoned by their father(s), the children have been in the temporary custody of the agency for more than 12 months within the last 22 months and it was in the best interest of the children for permanent custody to be granted to the agency.
 {¶ 16} It is from that Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 17} "I. THE COURT ERRED IN DETERMINING THAT SCDJFS PUT FORTH GOOD FAITH AND DILIGENT EFFORTS TO REHABILITATE THE FAMILY SITUATION.
 {¶ 18} "II. THE COURT ERRED IN DETERMINING THAT THE BEST INTERESTS OF THE CHILDREN WERE SERVED BY GRANTING PERMANENT CUSTODY OF THE CHILDREN TO STARK COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 19} In the first assignment of error, appellant contends that the agency failed to put forth a good faith effort to rehabilitate the family as required by R.C. 2151.419 (A)(1) and R.C. 2151.414(E)(1). We find no grounds for reversal.
 {¶ 20} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 21} Testimony at trial illustrates the efforts and services provided by the agency in an attempt to reunify this family. Unfortunately, due to appellant's incarcerations, failure to attend court hearings or failure to correspond in any manner with the worker, services were not successfully completed.
 {¶ 22} Appellant, while testifying at the permanent custody trial, stated he had not been to court in a significant matter of time and had not appeared for a hearing since "last year, I believe so." This is despite having counsel appointed at a June 7, 2004, hearing which was attended by appellant. Appellant stated that on the date of the hearing, it was the second time he had seen the worker assigned to his case and had not communicated much with the assigned social worker. Tr. at 38. Appellant acknowledged being incarcerated at least twice during the course of the current case, including serving time on a conviction for domestic violence. Tr. at 40.
 {¶ 23} Appellant had not attended the parenting program. As of the trial date, appellant had not completed this initial appointment at Melymbrosia. Appellant has never established his paternity of the children.
 {¶ 24} The ongoing worker stated that appellant did not contact her during the case to inquire about reunification with the children. Tr. at 51. Appellant was not invited to a family team conference to facilitate reunification as he had not complied with any case plan services and had not been in contact with the worker or the children. Tr. at 51.
 {¶ 25} The transcript essentially demonstrates that appellant took no active part in the court proceedings or in any efforts to reunify with his alleged children. The agency established that efforts and services were in place to facilitate reunification with appellant. However, appellant showed a lacked of effort and commitment to the reunification process.
 {¶ 26} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 27} In the second assignment of error, appellant contends that the grant of permanent custody was not in the childrens' best interests. We disagree.
 {¶ 28} This assignment of error is subject to the same standard of review addressed in the first assignment of error. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(February 10, 1982), Stark App. No. CA5-758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 29} Appellant's assignment of error concerns the trial court's finding that the grant of permanent custody to the agency was in the children's best interest. In determining the best interest of a child at a permanent custody hearing, R.C.2151.414(D) mandates that the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and 5) whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.[4]
 {¶ 30} Essentially, appellant asserts that there was no evidence that the children would not be able to adjust to placement with appellant. Further, appellant argues that the evidence showed that the two children are bonded together and appellant was willing to take both of the children, enabling them to stay together.
 {¶ 31} We find that the trial court's decision to grant permanent custody to the agency is supported by competent, credible evidence. Ms. Alma Moore, the children's treating therapist, testified at the hearing. Ms. Moore has treated the children since August, 2004. Ms. Moore stated that the children, historically, have had behavioral issues in their placements and school settings. Ms. Moore stated that the children are currently stable in their placement and that there has been a "significant decrease in their disruptive, oppositional and aggressive behaviors." Tr. at 102-103. Ms. Moore stated that continued changes in placement and school systems raised a concern about the children's ability to adjust in a healthy manner. Since August, 2004, there had been "very positive" changes in the children's behavior. Tr. at 110. Ms. Moore testified that, initially, the two boys were disruptive and argumentative with each other. Since they have been in foster care and treated by Ms. Moore, and as time progressed, the boys have become more compliant and understanding of appropriate behavior.
 {¶ 32} Ms. Moore opined that the children are bonded to their current placement. The children's bond with appellant was viewed as "uncertain" as the children "did not speak of him very much in our sessions at all." Tr. at 111. In Ms. Moore's opinion, the children were capable of going through the permanency process leading to eventual adoption.
 {¶ 33} The ongoing social worker, Cheri Vandebourne, identified the children as bi-racial children who suffer from ongoing emotional and behavioral issues. In particular, both children were diagnosed as suffering from oppositional defiant disorder (ODD). According to Ms. Vandebourne, these issues would not preclude the children from adoption. Further, Ms. Vandebourne testified that the children are bonded to one another and enjoying being placed together, which is the agency's ongoing intent. Tr. at 120. Ms. Vandebourne testified that they are bonded with their mother but testified that the children have a greater and more significant bond to their foster home than to either biological parent. Ms. Vandebourne based her opinion, in part, on the fact that the children did not mention their father when they talked with Ms. Vandebourne. In addition, Ms. Vandebourne testified that she had observed that the boys seemed very happy and content in the foster home. In the environment of the foster home, the boys are respectful and "do what they're asked." Tr. at 121. In fact, the boys had told Ms. Vandebourne that they are "more than happy with where they're at." Tr. at 121-122.
 {¶ 34} No viable relatives came forward as possible placement or custodians for the children. Tr. at 126. In fact, at the time of the best interests hearing, appellant had not established paternity of the two children.
 {¶ 35} For the foregoing reasons, appellant's second assignment of error is overruled.
 {¶ 36} The judgment of the Stark County court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Hoffman, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Cathy May appealed the grant of permanent custody also. See Stark App. No. 2005CA00231.
[2] Stark County Juvenile Court case No. JU103020.
[3] The Complaint alleged as follows:
"The SCDJFS has extensive prior history with this family including JU 103020, in which legal custody of both Tres' [sic] and Aaron was granted to the paternal grandmother, Elenore Peterson. Concerns in that case included substance abuse, domestic violence and improper supervision. At the time of that filing in June of 1998, Tres' [sic] and Aaron, then 2 years old and 18 months old, were found home alone at 2:00 a.m. The parents failed to comply with case plan objectives and custody was granted to the paternal grandmother in May of 1999. The SCDJFS' involvement was terminated at that time.
"SCDJFS received a referral on January 23, 2003, that Mother had been picked up on warrants and that the children had been residing with her since shortly after the change of legal custody occurred. The SCDJFS was also advised that the children were home alone.
"Mother's neighbor reported that Mother had called him at approximately 3:00 a.m. on January 23, 2003, and asked him to go to the jail, get the key from her, and watch the boys. The neighbor told SCDJFS that he did as Mother had asked, but that he could not provide for the boys on a long term basis. The neighbor further reported to SCDJFS that Mother had asked him to watch the boys earlier in the day so that she could go out drinking and he had refused. The neighbor further stated to the SCDJFS worker that Mother drinks on a daily basis and that she [becomes extremely] belligerent when drinking.
"The children reported to the SCDJFS worker that their mother is "sick because she drinks and smokes too much." The children further reported that Mother had been drinking the night before. The children told the SCDJFS worker that "if they wake up and Mother is not there, we go to the neighbors."
"Paternal grandmother stated to case worker that she no longer wants custody of the boys. She stated that she cannot take them back because she has no room in her home due to other family members residing there. Mother's neighbor reported to the SCDJFS worker that both the maternal and paternal grandmother refused to come and get the boys from his residence.
"Alleged father is currently incarcerated. Alleged father has a history of domestic violence and alcohol and/or substance abuse. Mother has an extensive criminal history including theft, criminal damaging or endangering, disorderly conduct by intoxication, passing bad checks, receiving stolen property and forgery.
"The SCDJFS was unable to locate any appropriate relatives to take placement of the children. Both children were taken into custody pursuant to Juvenile Rule 6 by the Massillon Police Department.
"The SCDJFS has subsequently become aware of the fact that Mother did not spend the night in jail. However, court personnel reported to case worker that Mother stopped an officer at approximately 3:00 a.m. and made statements about looking for crack."
[4] R.C. 2151.414(E0(7) to (11) states as follows:
"(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
"(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
"(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense; "(d) An offense under section 2907.02, 2907.03,2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
"(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
"(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
"(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
"(10) The parent has abandoned the child.
"(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child."